*Decision will be entered under Rule 50.*

RAYMOND E. COOPER AND JUDY COOPER, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 70456, 70457, 70528. Filed October 31, 1962.

*John Y. Merrell, Esq.*, and *K. William O'Connor, Esq.*, for the petitioners.

*Hubert E. Kelly, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Bascom H. Smith and June E. Smith, Docket No. 70457; and Norman E. Clifton and Virgie Clifton, Docket No. 70528.

Fay, *Judge:* The respondent determined deficiencies in the petitioners' income taxes and additions to tax, as follows:

| Docket No. | Petitioners | Year | Deficiency | Additions to tax | |
|---|---|---|---|---|---|
| | | | | Sec. 294(d)(1)(A) | Sec. 294(d)(2) |
| 70456 | Raymond E. Cooper and Judy Cooper | 1953 | $4,340.22 | $698.58 | $465.72 |
| | | 1954 | 5,683.10 | | |
| | | 1955 | 6,345.69 | | |
| 70457 | Bascom H. Smith and June E. Smith | 1953 | 3,249.84 | | |
| 70528 | Norman E. Clifton and Virgie Clifton | 1955 | 2,761.85 | | |

The incorrectness of the addition to tax under section 294(d)(2) was conceded by respondent at the trial of these cases.

The only questions for decision are (1) whether the petitioners are entitled to percentage depletion on income derived from mining coal under agreements with the Jewell Ridge Coal Corporation and (2) whether the petitioners at Docket No. 70456 had reasonable cause for failing to file a declaration of estimated tax for the year 1953.

### FINDINGS OF FACT.

Some of the facts are stipulated and are found as stipulated.

Petitioners at each of the docket numbers are husband and wife. They filed their joint Federal income tax returns for the years involved with the district director of internal revenue at Richmond, Virginia. The wives are parties to these proceedings solely by reason of their participation in joint returns. Therefore, the word "petitioners" will be used hereafter to refer only to the male petitioners.

The petitioners, during the years in question, were engaged in the business of mining coal. They conducted their operations on land which the Jewell Ridge Coal Corporation (hereinafter referred to as Jewell Ridge) held under a long-term lease with a third party. This land was in the southwest corner of the State of Virginia.

The petitioners all conducted deep mining operations of the drift mine variety, i.e., they extracted coal by driving a horizontal shaft in a seam of coal located in a mountain and removing coal from the shaft as it was being driven.

Before commencing operations at any location, it was necessary for the petitioners to build a road up to the area in which they would mine so that they could remove the coal by truck. This road was maintained by petitioners during the operation of the particular mine involved. They also were required to make arrangements for a source of electrical power at their mine, to remove the earth and rock lying above the seam of coal, and to build a coal chute and storage bin as well as various outbuildings for storing supplies and housing equip-

ment. All of this was at petitioners' expense. In addition, certain movable mining equipment was necessary to carry on their operations.

The petitioners conducted their operations under oral agreements with Jewell Ridge. All of the petitioners originally began their operations on the property under arrangements made before 1953 with James A..Hagy, who was at that time general superintendent of the Virginia division of Jewell Ridge.

Under the oral agreements with Jewell Ridge, the petitioners were required to mine in accordance with applicable State and local law and conduct a union operation. They were to mine only within their boundaries and along the projections set for them by Jewell Ridge's engineers. Finally, the petitioners were to mine clean coal and to deliver all of the coal they mined to Jewell Ridge.[2] Jewell Ridge agreed to pay the petitioners a reasonable price in view of costs of production and market factors for each ton of coal delivered to Jewell Ridge. The petitioners were entitled to terminate the agreements before they mined all of the coal within their boundaries. If they did so, however, they were not entitled to remove their buildings and facilities for use elsewhere. If they completed mining their area, they could remove their buildings and facilities for use on another site.

The prices received by the petitioners for their coal were as follows:

### COAL MINED UNDERGROUND

| | | |
|---|---|---|
| Mar. 1, 1952–Sept. 30, 1952 | | $4.30 |
| Oct. 1, 1952–Nov. 30, 1952 | | 4.60 |
| Dec. 1, 1952–Mar. 31, 1953 | | 4.50 |
| Apr. 1, 1953–June 30, 1953 | | 4.25 |
| July 1, 1953–Mar. 13, 1954 | | 4.00 |
| Mar. 14, 1954–Jan. 31, 1955 | | 3.60 |
| Feb. 1, 1955–Feb. 28, 1955 | | 3.85 |
| Mar. 1, 1955–Apr. 30, 1955 | | 3.75 |
| May 1, 1955–Aug. 31, 1955 | | 3.60 |
| Sept. 1, 1955–Sept. 30, 1955 | | 3.80 |
| Oct. 1, 1955–Mar. 31, 1956 | | 3.85 |
| Apr. 1, 1956–Sept. 30, 1956 | | 3.95 |
| Oct. 1, 1956–Nov. 30, 1956 | | 4.15 |
| Dec. 1, 1956–Dec. 31, 1956 | | 4.25 |

### COAL MINED BY AUGER

| | | |
|---|---|---|
| Oct. 1, 1952–Nov. 30, 1952 | | 4.70 |
| Dec. 1, 1952–Jan. 31, 1953 | | 4.50 |
| Feb. 1, 1953–Mar. 13, 1954 | | 4.00 |
| Mar. 14, 1954–Apr. 30, 1954 | | 3.60 |
| May 1, 1954–Aug. 31, 1955 | | 2.75 |
| Sept. 1, 1955–Sept. 30, 1955 | | 3.20 |
| Oct. 1, 1955–Dec. 15, 1955 | | 3.25 |

[2] During the first 2 months of 1953 coal could also be delivered to the Hagy Coal Co., a partnership of Jewell Ridge employees.

Petitioner Cooper had gross receipts from his mining operations, as follows:

| | |
|---|---|
| 1953 | $112,077.80 |
| 1954 | 153,918.40 |
| 1955 | 268,225.08 |

Petitioner Smith had gross receipts from his mining operations in 1953 of $118,221.71. Petitioner Clifton had gross receipts from his mining operations in 1955 of $167,484.07.

Each of the petitioners deducted in the years in issue an amount for percentage depletion based on his gross receipts from coal production. These deductions were disallowed by the respondent.

Petitioner Cooper did not file a declaration of estimated tax for the year 1953. In his deficiency notice the Commissioner determined an addition to tax for failure to file such a declaration under section 294(d)(1)(A) of the Internal Revenue Code of 1939.

### OPINION.

The first question is whether the petitioners are entitled to a deduction for depletion for the coal they mined under their agreements with Jewell Ridge. The petitioners contend that they are entitled to a deduction for depletion under section 23(m) of the Internal Revenue Code of 1939 and section 611(a) of the Internal Revenue Code of 1954 for the coal they mined under their agreements with Jewell Ridge.[3] The respondent, on the other hand, urges that the petitioners' agreements with Jewell Ridge did not give them an economic interest in the coal in place and, therefore, the petitioners are not entitled to depletion.

In support of their contention, the petitioners have urged that their agreements with Jewell Ridge were not subject to termination on the part of Jewell Ridge. Much evidence, both direct and indirect, was given at the trial of this case which bore upon this question. After considering the evidence, we conclude that the petitioners have failed

---

[3] The petitioners claimed depletion of 10 percent of gross income from mining under section 114(b)(4) of the Internal Revenue Code of 1939, as amended by section 319(a) of the Revenue Act of 1951, and similar provisions of the Internal Revenue Code of 1954. Section 114(b)(4) provides, in part, as follows:

SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

(b) BASIS FOR DEPLETION.—

\* \* \* \* \* \* \*

(4) PERCENTAGE DEPLETION FOR COAL AND METAL MINES AND FOR CERTAIN OTHER MINES AND NATURAL MINERAL DEPOSITS.—

(A) IN GENERAL.—The allowance for depletion under section 23(m) in the case of the following mines and other natural deposits shall be—

\* \* \* \* \* \* \*

(ii) in the case of coal, asbestos, brucite, dolomite, magnesite, perlite, wollastonite, calcium carbonates, and magnesium carbonates, 10 per centum.

to establish by a preponderance of the evidence that their rights were not subject to termination by Jewell Ridge.

In addition, we are unable to conclude that the petitioners made any investment in the coal in place. They have not shown that they made any expenditures which they were not entitled to deduct either as business expenses or through the allowance for depreciation.

In *Parsons* v. *Smith*, 359 U.S. 215 (1959), the Supreme Court, in holding certain strip miners were not entitled to depletion, laid down certain criteria for determining whether a miner is entitled to take the depletion deduction. The criteria stated by the Supreme Court in the *Parsons* case have been applied in a number of cases in holding that miners were not entitled to the depletion deduction. *United States* v. *Stallard*, 273 F. 2d 847, 851 (C.A. 4, 1959); *Utah Alloy Ores, Inc.*, 33 T.C. 917 (1960); *Walter Bernard McCall*, 37 T.C. 674 (1962), on appeal (C.A. 4, 1962); *J. Shelton Bolling*, 37 T.C. 754 (1962); *William M. Legg*, 39 T.C. 30 (1962). We do not believe that the instant case is sufficiently distinguishable from the *Parsons* case or the other cases we have cited to justify a result different from that reached in those cases. We must, therefore, hold for the respondent on this issue.

The second question is whether the petitioners at Docket No. 70456 are subject to the addition to tax for failure to file a declaration of estimated tax under section 294(d)(1)(A) of the Internal Revenue Code of 1939 for the year 1953. The Commissioner determined the addition to tax in his deficiency notice. At the trial, the petitioners produced no evidence with regard to it. Therefore, judgment on this issue must be for the respondent.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*